IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JULIA HIBBELER, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) Civil Action No: _____ |
| Defendant. | ) FEDERAL BENCH TRIAL |

## COMPLAINT

Comes the Plaintiff Julia Hibbeler, to sue the Defendant as follows:

### I. Parties, Jurisdiction and Venue

1. Defendant is a our sovereign Government, who operates, controls and maintains the Town Center Pharmacy and adjacent sidewalk structures located in front of the Town Center Pharmacy located at 98 Michigan Avenue, Fort Campbell, Christian County, Kentucky 42223. The Town Center Pharmacy is one of five pharmacies at Fort Campbell, Kentucky operated by Blanchfield Army Community Hospital (hereinafter "BACH"). Town Center Pharmacy is part of the larger BACH pharmacy system that also includes other military pharmacy locations: Byrd, La Pointe, Screaming Eagle Medical Home, and the main hospital pharmacy itself. The sidewalk system for ingress and egress into and from Town Center Pharmacy is likewise owned, controlled and maintained by the Defendant. The purpose the Defendant operates the Town Center Pharmacy is to provide a full-service pharmacy for Tricare beneficiaries to include active military service members, retired members and their families.

2. Plaintiff Julia Hibbeler is a United States citizen, and a resident of Clarksville, Montgomery County, Tennessee. Plaintiff Julia Hibbeler suffered injury resulting from a fall caused

by a dangerously defective condition maintained on the sidewalk system of the Town Center Pharmacy.

3. This civil action is brought pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. § 1346 (b) and 28 U.S.C. §§ 2671-2680. Plaintiff seeks unliquidated damages.

4. Jurisdiction of this action is vested in this Honorable Court pursuant to 28 U.S.C. § 1346(b). Plaintiff was, at all times material hereto, a resident of Clarksville, Tennessee. The situs where this tort claim accrued is in Christian County, Kentucky. Thus pursuant to 28 U.S.C. § 1402(b), venue of this action is proper in this honorable Court.

5. Plaintiff's injury occurred on or about November 23, 2022, and Plaintiff filed an administrative claim (**STANDARD FORM 95**-REV 2/2007) with the Defendant on November 20, 2023. (See attached Exhibit 1, Claim for Date, Injury or Death). A final disposition of the administrative claim occurred when the Defendant issued a denial letter dated July 24, 2025. (See attached Exhibit 2). Plaintiff has exhausted all administrative remedies prior to filing this civil action.

## II. Factual Allegations

6. On or about November 23, 2022, Plaintiff Julia Hibbeler was lawfully present as an invitee at Town Center Pharmacy located at 98 Michigan Avenue, Fort Campbell, Christian County, Kentucky 42223.

7. After conducting her business, Plaintiff Julia Hibbeler left Town Center Pharmacy.

8. The path Plaintiff Julia Hibbeler walked from Town Center Pharmacy towards her vehicle in the parking lot, required she walk on a sidewalk system.

9. The concrete sidewalk contained an approximate 7/8" vertical rise which caused a dangerously defective walking surface.

10. The sidewalk with a defective vertical change in elevation or displacement is not in a proper state of repair and is a structurally unsafe condition.

11. The toe of Plaintiff Julia Hibbeler's rubber-soled flat shoe caught in the vertical rise, causing her to trip and fall forcefully to the ground.

12. The dangerously defective condition was not open nor obvious to Plaintiff Julia Hibbeler, nor to any other reasonable invitee.

13. There was no warning, nor barricade to alert Plaintiff Julia Hibbeler, nor any other invitee, concerning the dangerous defects on this public accessible walking surface.

14. Plaintiff Julia Hibbeler sustained serious injuries, including but not limited to a head contusion/abrasion, right knee pain/strain and right shoulder impingement with biceps tendinitis and partial thickness rotator cuff tear requiring surgical repair, and ultimately hardware removal surgery, along with other injuries, pain, suffering, physical impairment, property damage, and other harms and losses resulting therefrom.

15. Defendant owed a duty of reasonable care to Plaintiff Julia Hibbeler, and all other invitees, to inspect, maintain and repair the premises, including the sidewalks, in a reasonably safe condition.

16. Defendant took no actions to warn or barricade to protect its invitees from the dangerous defective condition.

17. Defendant knew or should have known of the dangerously defective condition posed by the vertical rise in the concrete sidewalk.

18. The sidewalk system was a commons area, available to the public, including Plaintiff Julia Hibbeler who was a lawful invitee on the premises.

19. The Defendant had a duty to maintain the sidewalk system in a safe condition for lawful visitors and invitees, and the public at large.

## III. Legal Allegations

20. Defendant owed safety duties to all foreseeable invitees, including Plaintiff Julia Hibbeler.

21. Safety duties are standards created by laws, ordinances, regulations, and common law.

22. The sidewalk system where Plaintiff fell is subject to safety and accessibility standards.

23. Defendant's legal duties setting the standards of reasonable conduct for maintaining reasonably safe public accessibility are cited as follows:

    a. **Kentucky Premises Liability Law** - requires property owners to maintain reasonably safe premises for reasonably foreseeable visitors;

    b. **KRS 198B.050** which adopts various building codes and safety regulations;

    c. **Federal Architectural Barriers Act (ABA) Standards** - The ABA requires that facilities designed, built, altered, or leased with federal funds be accessible to individuals with disabilities.

    Section 303 - Changes in Level of the ABA Standards states:

- 303.2 Vertical: Changes in level of 1/4 inch (6.4 mm) maximum in height shall be permitted to be vertical.

- 303.3 Beveled: Changes in level greater than 1/4 inch (6.4 mm) in height and not more than 1/2 inch (13 mm) maximum in height shall be beveled with a slope not steeper than 1:2.

- 303.4 Ramps: Changes in level greater than 1/2 inch (13 mm) in height shall be ramped and shall comply with Section 405 or 406.

    d. The building code for commercial properties adopted by Fort Campbell, Kentucky at the time of the sidewalk system fall incident was the 2018 edition of the International Building Code (IBC). Regarding walkway elevation changes, the IBC Commentary for Section 1003.5 Elevation Change states the following:

- <u>Minor changes in elevation</u>, such as a single step that is located in any portion of the means of egress (i.e.,

<u>exit access, exit or exit discharge) may not be readily apparent during normal use or emergency egress and are considered to present a potential tripping hazard.</u> Where the elevation change is less than 12 inches (305 mm), a ramp or sloped surface is specified to make the transition from higher to lower levels. <u>This is intended to reduce accidental falls associated with the tripping hazard of an unseen step.</u>

e. **Kentucky Building Code Adoption of ICC A117.1 - The International Code Council (ICC) ANSI A117.1-2009 Accessible and Usable Buildings and Facilities,** adopted by Clarksville, states the following concerning accessible route changes in elevation:

303 Changes in Level

- 303.1 General. Changes in level in floor surfaces shall comply with Section 303.

- 303.2 Vertical. Changes in level of 1/4 inch (6.4 mm) maximum in height shall be permitted to be vertical.

- 303.3 Beveled. Changes in level greater than 1/4-inch (6.4 mm) in height and not more than 1/2-inch (13 mm) maximum in height shall be beveled with a slope not steeper than 1:2.

- 303.4 Ramps. Changes in level greater than 1/2-inch (13 mm) in height shall be ramped and shall comply with Section 405 or 406.

405 Ramps

405.1 General. Ramps along accessible routes shall comply with Section 405.

405.2 Slope. Ramp runs shall have a running slope greater than 1:20 and not steeper than 1:12.

f. The national consensus standard for safe walking surfaces, American Society for Testing and Materials (ASTM) F1637 Standard Practice for Safe Walking Surfaces - 2019 Edition, states the following in Section 5.7 Exterior Walkways:

5.7 Exterior Walkways: 5.7.1 Exterior walkways shall be maintained to provide safe walking conditions.

5

5.7.1.2 Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is broken, depressed, raised, undermined, slippery, uneven, or cracked to the extent that pieces may be readily removed.

5.7.2 Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces. Vertical displacements in exterior walkways shall be transitioned in accordance with 5.2.

5.2 Walkway Changes in Level: 5.2.1 Adjoining walkway surfaces shall be made flush and fair, whenever possible, and for new construction and existing facilities to the extent practicable.

5.2.2 Changes in levels up to 1/4 in. (6 mm) may be vertical and without edge treatment. (See Fig. 1.)

5.2.3 Changes in levels between 1/4 and 1/2 in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

5.2.4 Changes in levels greater than 1/2 in. (12 mm) shall be transitioned by means of a ramp or stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

24. Defendant was negligent per se in that they:

   a. maintained dangerously defective conditions in violation of these public accessibility standards;

   b. failed to maintain the sidewalk system common area in a reasonably safe condition;

   c. permitted a dangerous vertical rise in a required accessible route;

   d. despite actual notice and constructive notice of this dangerously defective condition, failed to fix, remove, warn or barricade the dangerously defective condition on the public accessible walking space; and

   e. failed to comply with applicable building codes and accessibility standards.

6

25. Plaintiff alleges the Defendant failed to use reasonable care.

26. Defendant breached these duties owed to the Plaintiff, and therefore was negligent.

27. Plaintiff Julia Hibbeler exercised that care that a reasonably prudent invitee in her shoes would have under the same circumstances, such that she was not placed on notice of the danger so as to act differently in furtherance of her own safety.

28. Plaintiff alleges Defendant bears one hundred (100%) percent comparative fault concerning Plaintiff Julia Hibbeler's fall and resulting harms and losses.

29. As a direct and proximate result of the negligence of the Defendant, Plaintiff Sheryl Conner did suffer general and special damages as a result of personal injuries, and other harms and losses proximately caused as a result of the negligence of Defendant.

30. Defendant acted with reckless disregard of the rights and safety of Plaintiff Julia Hibbeler, other reasonably foreseeable invitees, and the public at large, which was grossly negligent conduct which was also the direct and proximate cause of Plaintiff's injuries, for which punitive damages are necessary to punish and deter the Defendant and all others from such future reckless conduct.

## V. Prayers for Relief

WHEREFORE, Plaintiff prays:

1. Process issue and Defendant be required to Answer within the time allowed by law;

2. For a GTLA bench trial be heard;

3. Find that the Plaintiff Julia Hibbeler acted with reasonable care for her own safety, under the circumstances, and that the Plaintiff is without fault;

4. Determine the Defendant to have negligently maintained an unreasonable and dangerously defective condition on their property, which is that they failed to use due care;

5. Find that the Defendant had actual and/or constructive knowledge of the dangerous

condition, such that the should have acted to prevent this injury;

6. Find the Defendant liable to the Plaintiff for their negligence pursuant to the doctrine of res ipsa loquitur;

7. Find the Defendant to bear one hundred (100%) percent comparative fault for the negligent behavior which resulted in the Plaintiff's injury and resulting harms and losses; and

8. For judgment finding that the Defendant owes general and special compensatory damages to the Plaintiff in an amount of three million three hundred fifty ($3,000,350.00) dollars.

Respectfully submitted,

*[signature]*

PETER M. OLSON #14977
S. NICHOLAS MURPHEY #37797
PETE OLSON LAW, PC
114 Franklin Street
Clarksville, Tennessee 37040
(931) 906-0080
pete@getpetelaw.com
nick@getpetelaw.com
Attorneys for Plaintiff

16017:COMPLAINT.C22